## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

THE GASPEE PROJECT and
ILLINOIS OPPORTUNITY PROJECT,

               Plaintiffs,

     v.

DIANE C. MEDEROS, STEPHEN P.
ERICKSON, JENNIFER L. JOHNSON,
RICHARD H. PIERCE, DR. ISADORE S.
RAMOS, DAVID H. SHOLES, and
WILLIAM E. WEST, in their official
capacities as members of the Rhode Island
State Board of Elections,

               Defendants.

C.A. No. _____

## COMPLAINT

### INTRODUCTION

1.     Stretching back to the founding era and *The Federalist Papers*, freedom of speech has included the right to engage in anonymous issue advocacy concerning important public issues. *Talley v. California*, 362 U.S. 60 (1960); *McIntyre v. Ohio Election Comm.*, 514 U.S. 334 (1995). *See The Federalist Papers* (Charles R. Kesler and Clinton Rossiter, eds., 2003).

2.     Similarly, the freedom of association includes the right of private individuals to band together for common purposes without government prying into those associations' membership or donor lists. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963).

3.     During certain time periods proximate to elections, Rhode Island statutes require organizations engaged in issue advocacy to disclose the identity of their members and supporters

to the Defendant members of the State Board of Elections. Collectively, Defendants are referred to as the "Board."

4.      The statutes also require that organizations engaged in issue advocacy identify themselves to the Board and disclose certain information on the face of an issue ad.

5.      Plaintiffs, the Gaspee Project and Illinois Opportunity Project, intend to engage in issue advocacy in Rhode Island concerning referenda and legislators up for votes in fall 2020. If Plaintiffs were to engage in their planned issue advocacy, they would be required to report their sponsorship and disclose their donors to the Board.

6.      To protect their privacy and that of their donors, Plaintiffs bring this suit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief to protect their core First Amendment rights to free speech and association.

## PARTIES

7.      Plaintiff the Gaspee Project is a 501(c)(4) social-welfare organization based in Cranston, Rhode Island.

8.      Plaintiff Illinois Opportunity Project is a 501(c)(4) social-welfare organization based in Chicago, Illinois.

9.      Defendant Diane C. Mederos is sued in her official capacity as the Chairwoman of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

10.      Defendant Stephen P. Erickson is sued in his official capacity as the Vice-Chairman of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

11.      Defendant Jennifer L. Johnson is sued in her official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

12.     Defendant Richard H. Pierce is sued in his official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

13.     Defendant Dr. Isadore S. Ramos is sued in her official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

14.     Defendant David H. Sholes is sued in his official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

15.     Defendant William E. West is sued in his official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

## JURISDICTION AND VENUE

16.     This case raises claims under the First and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

17.     Venue is appropriate under 28 U.S.C. § 1391(b) because the Defendants reside in and the events giving rise to the claim took place in the District of Rhode Island.

## FACTUAL ALLEGATIONS

18.     Persons, business entities, or political action committees which engage in "independent expenditures" and "electioneering communications" are subject to a number of regulations under Rhode Island law. *See* R.I. Gen. Laws 17-25.3-1.

19.     Independent expenditure entities "shall report all such campaign finance expenditures and expenses to the board of elections, provided the total of the money so expended exceeds one thousand dollars ($ 1,000) within a calendar year, to the board of elections within seven (7) days of making the expenditure." *Id*. at (b). Such reports "shall contain the name, street

address, city, state, zip code, occupation, employer (if self-employed, the name and place of business), of the person responsible for the expenditure. . . ." *Id*. at (f).

20.     "The report shall also include a statement identifying the candidate or referendum that the independent expenditure or electioneering communication is intended to promote the success or defeat, and affirm under penalty of false statement that the expenditure is not coordinated with the campaign in question. . ." *Id*. at (g).

21.     The report must also "disclose the identity of all donors of an aggregate of one thousand dollars ($ 1,000) or more to such person, business entity or committee within the current election cycle. . . ." *Id*. at (h).

22.     When an independent expenditure entity publishes an electioneering communication, it must include in the communication its name, the name and title of its chief executive, and a list of its "'Top Five Donors' followed by a list of the five (5) persons or entities making the largest aggregate donations to such person, business entity or political action committee during the twelve (12) month period . . . ." R.I. Gen. Laws 17-25.3-3(a) (printed materials), (c) (television advertisements), (d) (radio advertisements), and (e) (robocalls).

23.     Failure to comply with any section of the independent expenditure statute is punishable by a civil penalty levied by the Board. R.I. Gen. Laws 17-25.3-4(b).  Knowing and willful violations are a criminal misdemeanor. *Id*. at (a).

24.     An independent expenditure entity is subject to these rules when it publishes an "electioneering communication," which is defined as "any print, broadcast, cable, satellite, or electronic media communication . . . that unambiguously identifies a candidate or referendum and is made either within sixty (60) days before a general or special election or town meeting for the office sought by the candidate or referendum; or thirty (30) days before a primary election,

for the office sought by the candidate; and is targeted to the relevant electorate." R.I. Gen. Laws 17-25-3(16).

25.     The effect of this definition is to classify issue advocacy communications that mention a candidate or referendum as an independent expenditure if they are made within the windows of time proximate to an election.

26.     The Gaspee Project is a state-focused 501(c)(4) organization that engages in issue advocacy communications around its mission to return government to the people.  It supports market-based solutions that can transform lives through economic competitiveness, educational opportunity, and individual freedom.

27.     The Illinois Opportunity Project (IOP) engages in issue advocacy in states across the country on issues that relate to its mission, which is to promote the social welfare and common good by supporting policies founded on the principles of liberty and free enterprise.  It feels strongly that issue advocacy is a protected right under the First Amendment, and it has sought to vindicate that right with legal action.  *See IOP v. Bullock*, 6:19-cv-00056-CCL (D. Mont.), and *IOP v. Holden*, 3:19-cv-17912-BRM-LHG (D.N.J.).

28.     Plaintiff the Gaspee Project wishes to communicate its views on upcoming referenda to Rhode Island voters. In particular, it plans to spend over $1,000 on paid issue-advocacy communications by mail to thousands of Rhode Island voters in advance of the fall 2020 elections. These mailings will include information about pending local referenda that will affect property taxes. The mailings will inform voters of the impact of the referenda on taxes. The communications will not include any express ballot-advocacy as to the referenda.

29.     Plaintiff Illinois Opportunity Project plans to spend over $1,000 on paid issue-advocacy communications by mail to thousands of Rhode Island voters in advance of the fall

2020 legislative elections.  These mailings will provide information to voters about how their legislators voted on a bill expanding the power of government unions (2019 Senate Bill 712).

30.     Plaintiffs intend to engage in substantially similar speech in Rhode Island in the future.

31.     Plaintiffs both have received donations over $1,000 in the past and intend to solicit and accept donations over $1,000 in the future.

32.     If Plaintiffs engage in their planned issue advocacy in Rhode Island, then any individual or organization that supports either with $1,000 or more in donations will have to be disclosed to the Board.

33.     If Plaintiffs engage in their planned issue advocacy, they will be required to file reports with the Board and to include state-mandated information and disclaimers on all their materials.

34.     Plaintiffs are concerned that compelled disclosure of their members and supporters could lead to substantial personal and economic repercussions. Across the country, individual and corporate donors and staff of political candidates and issue causes are being subject to harassment, career damage, and even death threats for engaging and expressing their views in the public square. Plaintiffs reasonably fear that their members, supporters, and leaders may also encounter similar reprisals from certain activists if their association with Plaintiffs is made public.

35.     Plaintiffs also believe that disclosure of their donors will lead to declines in their membership and fundraising, impacting their organizations' bottom lines and ability to carry out their missions.

36.     Plaintiffs, therefore, bring this pre-enforcement challenge on behalf of themselves and their donors to vindicate their First Amendment rights. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (setting the standard for pre-enforcement challenges). Plaintiffs intend to engage in a course of conduct affected with constitutional interest (namely, issue advocacy). If they were to move forward with their course of conduct, their sponsorship of issue advocacy and their members' and supporters' contributions to their work would be subject to reporting and disclosure.

37.     Because of these potential harms, these sections of the Rhode Island statutes will chill Plaintiffs' own speech and cause them not to engage in their desired communications, so long as these statutes remain enforceable law.

38.     Plaintiffs have no remedy at law.

## COUNT I

**By requiring Plaintiffs to disclose their members and supporters, the Board violates the First and Fourteenth Amendments.**

39.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

40.     Plaintiffs and their donors enjoy a right to privacy in their association for free speech about issues. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963). This right to privacy in association for free speech is protected by the First Amendment as incorporated against the states. *Id*. The statute violates that right by requiring disclosure of donations, ending the privacy of the speech-oriented association.

41.     The statute cannot survive the most exacting standards of strict scrutiny. The U.S. Supreme Court has found a compelling interest in membership-disclosure regulations only when

the association was engaged in or advocating for illegal activity. *Familias Unidas v. Briscoe*, 619 F.2d 391, 401 (5th Cir. 1980). Plaintiffs have no track record of illicit conduct nor have they ever embraced plainly unlawful means and ends; they are legitimate, social-welfare organizations engaged in issue advocacy. The government lacks a compelling interest in forcing them to disclose their members and supporters.

42.     Plaintiffs and their members and supporters are entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of R.I. Gen. Laws 17-35.3-1(h) as applied to themselves and to other organizations engaged in issue advocacy.

## COUNT II

**By requiring Plaintiffs to disclose their sponsorship of issue advocacy,
the Board violates the First and Fourteenth Amendments.**

43.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

44.     Plaintiffs enjoy a right to anonymity in their free speech about public-interest issues, a right protected by the First Amendment as incorporated against the states. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Blakeslee v. St. Sauveur*, 51 F. Supp. 3d 210 (D.R.I. 2014).  The statutes in question violate that right by requiring Plaintiffs to report to the Board when engaging in issue speech and to put a detailed disclaimer announcing their sponsorship on all of their issue-advocacy materials.

45.     As applied to Plaintiffs' planned activities, this statute affects genuine issue speech, not express advocacy concerning candidates or ballot measures.  *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836-37 (7th Cir. 2014) (government does not have "a green light

to impose political-committee status on every person or group that makes a communication about a political issue that also refers to a candidate.").

46.    Plaintiffs are entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of R.I. Gen. Laws 17-25.3-3 as applied to them and to other persons or organizations engaged solely in issue advocacy.

47.    Plaintiffs are entitled to an injunction under 42 U.S.C. 1983 enjoining the continued enforcement of R.I. Gen. Laws 17-25.3-1 as applied to them and to other persons or organizations engaged solely in issue advocacy.

## PRAYER FOR RELIEF

Plaintiffs, the Gaspee Project and Illinois Opportunity Project, respectfully request that this Court:

   a. Declare that R.I. Gen. Laws 17-25.3, to the extent that it compels member and supporter disclosure for organizations engaged in issue advocacy, violates the Plaintiffs' right to freedom of speech and association under the First and Fourteenth Amendments;

   b. Declare that R.I. Gen. Laws 17-25.3-1, insofar as it compels sponsor reporting for issue advocacy, violates the Plaintiffs' right to engage in anonymous speech under the First and Fourteenth Amendments;

   c. Declare that R.I. Gen. Laws 17-25.3-3, to the extent that it compels sponsor disclosure for issue advocacy, violates the Plaintiffs' right to engage in anonymous speech under the First and Fourteenth Amendments;

   d. Enjoin the Board from enforcing R.I. Gen. Laws 17-25.3-1 against Plaintiffs and other organizations that engage solely in issue advocacy;

e.   Enjoin the Board from enforcing R.I. Gen. Laws 17-25.3-3 against Plaintiffs and
other organizations when they sponsor issue advocacy;

f.   Award Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988; and

g.   Award any further relief to which Plaintiffs may be entitled.

## DESIGNATION OF LEAD COUNSEL

Plaintiffs designate Daniel R. Suhr at Liberty Justice Center as lead counsel in this case,
subject to his admission as pro hac vice counsel.

Respectfully submitted,

/s/ Robert G. Flanders, Jr.
Robert G. Flanders, Jr. (#1785)
Caroline R. Thibeault (#9697)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel:  (401) 270-4500
Fax: (401) 270-3760
rflanders@whelancorrente.com
cthibeault@whelancorrente.com

Daniel R. Suhr
(*pro hac vice* to be filed)
Brian K. Kelsey
(*pro hac vice* to be filed)
Liberty Justice Center
190 S. LaSalle Street, Suite 1500
Chicago, Illinois 60603
Tel: (312) 263-7668
Fax: (312) 263-7702
dsuhr@libertyjusticecenter.org
bkelsey@libertyjusticecenter.org

**Counsel for The Gaspee Project and
Illinois Opportunity Project**

Dated:  November 21, 2019