# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**The Gaspee Project** and **Illinois Opportunity Project**,

        Plaintiffs,

v.

**Diane C. Mederos, et al.**,

        Defendants.

Case No. 1:19-cv-00609-MSM-LDA

Pursuant to Fed. Rule of Civ. Pro. 15(a)(1)(B), Plaintiffs file this first amended complaint as of right within the window of time provided by the Rule.

## INTRODUCTION

1. Stretching back to the founding era and *The Federalist Papers*, freedom of speech has included the right to engage in anonymous issue advocacy concerning important public issues. *Talley v. California*, 362 U.S. 60 (1960); *McIntyre v. Ohio Election Comm.*, 514 U.S. 334 (1995). *See The Federalist Papers* (Charles R. Kesler and Clinton Rossiter, eds., 2003).

2. Similarly, the freedom of association includes the right of private individuals to band together for common purposes without government prying into those associations' membership or donor lists. *NAACP v. Alabama ex rel. Patterson*,

357 U.S. 449 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963).

3.  During certain time periods proximate to elections, Rhode Island statutes require organizations engaged in issue advocacy to disclose the identity of their members and supporters to the Defendant members of the State Board of Elections and the general public. Collectively, Defendants are referred to as the "Board."

4.  The statutes also require that organizations engaged in issue advocacy identify themselves to the Board and disclose certain information on the face of an issue ad.

5.  Plaintiffs, the Gaspee Project and Illinois Opportunity Project, intend to engage in issue advocacy in Rhode Island concerning referenda and legislators up for votes in fall 2020. If Plaintiffs were to engage in their planned issue advocacy, they would be required to report their sponsorship and disclose their donors to the Board.

6.  To protect their privacy and that of their donors, Plaintiffs bring this suit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief to protect their core First Amendment rights to free speech and association.

## PARTIES

7. Plaintiff the Gaspee Project is a 501(c)(4) social-welfare organization based in Cranston, Rhode Island.

8. Plaintiff Illinois Opportunity Project is a 501(c)(4) social-welfare organization based in Chicago, Illinois.

9. Defendant Diane C. Mederos is sued in her official capacity as the Chairwoman of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

10. Defendant Stephen P. Erickson is sued in his official capacity as the Vice-Chairman of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

11. Defendant Jennifer L. Johnson is sued in her official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

12. Defendant Richard H. Pierce is sued in his official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

13. Defendant Dr. Isadore S. Ramos is sued in her official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

14. Defendant David H. Sholes is sued in his official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

15. Defendant William E. West is sued in his official capacity as a member of the Rhode Island State Board of Elections, which has its offices in Providence, Rhode Island.

## JURISDICTION AND VENUE

16. This case raises claims under the First and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

17. Venue is appropriate under 28 U.S.C. § 1391(b) because the Defendants reside in and the events giving rise to the claim took place in the District of Rhode Island.

## FACTUAL ALLEGATIONS

18. Persons, business entities, or political action committees which engage in "independent expenditures" and "electioneering communications" are subject to a number of regulations under Rhode Island law. *See* 17 R.I.G.L. 25.3-1.

4

19. Independent expenditure entities "shall report all such campaign finance expenditures and expenses to the board of elections, provided the total of the money so expended exceeds one thousand dollars ($ 1000) within a calendar year, to the board of elections within seven (7) days of making the expenditure." *Id*. at (b). Such reports "shall contain the name, street address, city, state, zip code, occupation, employer (if self-employed, the name and place of business), of the person responsible for the expenditure. . . ." *Id*. at (f).

20. "The report shall also include a statement identifying the candidate or referendum that the independent expenditure or electioneering communication is intended to promote the success or defeat, and affirm under penalty of false statement that the expenditure is not coordinated with the campaign in question. . . ." *Id*. at (g).

21. The report must also "disclose the identity of all donors of an aggregate of one thousand dollars ($ 1000) or more to such person, business entity or committee within the current election cycle. . . ." *Id*. at (h).

22. When an independent expenditure entity publishes an electioneering communication, it must include in the communication its name, the name and title of its chief executive, and a list of its "'Top Five Donors' followed by a list of the five (5) persons or entities making the largest aggregate donations to such person, business entity or political action committee during the twelve (12) month period .

5

. . ." 17 R.I.G.L. 25.3-3(a) (printed materials), (c) (television advertisements), (d) (radio advertisements), and (e) (robocalls).

23. Failure to comply with any section of the independent expenditure statute is punishable by a civil penalty levied by the Board. 17 R.I.G.L. 25.3-4 (b). Knowing and willful violations are a criminal misdemeanor. *Id*. at (a).

24. An independent expenditure entity is subject to these rules when it publishes an "electioneering communication," which is defined as "any print, broadcast, cable, satellite, or electronic media communication . . . that unambiguously identifies a candidate or referendum and is made either within sixty (60) days before a general or special election or town meeting for the office sought by the candidate or referendum; or thirty (30) days before a primary election, for the office sought by the candidate; and is targeted to the relevant electorate." 17 R.I.G.L. 25-3(16).

25. The effect of this definition is to classify issue advocacy communications that mention a candidate or referendum as an independent expenditure if they are made within the windows of time proximate to an election.

26. The Gaspee Project is a state-focused 501(c)(4) organization that engages in issue advocacy communications around its mission to return government to the people. It supports market-based solutions that can transform

lives through economic competitiveness, educational opportunity, and individual freedom.

27. The Illinois Opportunity Project (IOP) engages in issue advocacy in states across the country on issues that relate to its mission, which is to promote the social welfare and common good by supporting policies founded on the principles of liberty and free enterprise. It feels strongly that issue advocacy is a protected right under the First Amendment, and it has sought to vindicate that right with legal action. *See IOP v. Bullock*, 6:19-cv-00056-CCL (D.Mont.), and *IOP v. Holden*, 3:19-cv-17912-BRM-LHG (D.N.J.).

28. Plaintiff the Gaspee Project wishes to communicate its views on upcoming referenda to Rhode Island voters. In particular, it plans to spend over $1,000 on paid issue-advocacy communications by mail to thousands of Rhode Island voters in advance of the fall 2020 elections. These mailings will include information about pending local referenda that will affect property taxes. The mailings will inform voters of the impact of the referenda on taxes. The communications will not include any express ballot-advocacy as to the referenda.

29. Plaintiff Illinois Opportunity Project plans to spend over $1,000 on paid issue-advocacy communications by mail to thousands of Rhode Island voters in advance of the fall 2020 legislative elections. These mailings will provide

information to voters about how their legislators voted on a bill expanding the power of government unions (2019 Senate Bill 712).

30. Plaintiffs intend to engage in substantially similar speech in Rhode Island in the future.

31. Plaintiffs both have received donations over $1,000 in the past and intend to solicit and accept donations over $1,000 in the future.

32. If Plaintiffs engage in their planned issue advocacy in Rhode Island, then any individual or organization that supports either with $1,000 or more in donations will have to be disclosed to the Board.

33. If Plaintiffs engage in their planned issue advocacy, they will be required to file reports with the Board and to include state-mandated information and disclaimers on all their materials.

34. If Plaintiffs engage in their planned issue advocacy in Rhode Island, they will be required to list their top five donors on their materials.

35. Plaintiffs are concerned that compelled disclosure of their members and supporters could lead to substantial personal and economic repercussions. Across the country, individual and corporate donors and staff of political candidates and issue causes are being subject to harassment, career damage, and even death threats for engaging and expressing their views in the public square. Plaintiffs reasonably fear that their members, supporters, and leaders may also

encounter similar reprisals from certain activists if their association with Plaintiffs are made public. This fear is especially pronounced for those donors whose names will be directly printed on the issue-advocacy materials.

36. Plaintiffs also believe that disclosure of their donors will lead to declines in their membership and fundraising, impacting their organizations' bottom lines and ability to carry out their missions.

37. Plaintiffs, therefore, bring this pre-enforcement challenge on behalf of themselves and their donors to vindicate their First Amendment rights. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (setting the standard for pre-enforcement challenges). Plaintiffs intend to engage in a course of conduct affected with constitutional interest (namely, issue advocacy). If they were to move forward with their course of conduct, their sponsorship of issue advocacy and their members' and supporters' contributions to their work would be subject to reporting and disclosure.

38. Because of these potential harms, these sections of the Rhode Island statutes will chill Plaintiffs' own speech and cause them not to engage in their desired communications, so long as these statutes remain enforceable law.

39. Plaintiffs have no remedy at law.

## COUNT I

### By requiring Plaintiffs to disclose their members and supporters, the Board violates the First and Fourteenth Amendments.

40.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

41.     Plaintiffs and their donors enjoy a right to privacy in their association for free speech about issues. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963). This right to privacy in association for free speech is protected by the First Amendment as incorporated against the states. *Id*. The statute violates that right by requiring disclosure of donations, ending the privacy of the speech-oriented association.

42.     The statute cannot survive the most exacting standards of strict scrutiny. The U.S. Supreme Court has found a compelling interest in membership-disclosure regulations only when the association was engaged in or advocating for illegal activity. *Familias Unidas v. Briscoe*, 619 F.2d 391, 401 (5th Cir. 1980). Plaintiffs have no track record of illicit conduct nor have they ever embraced plainly unlawful means and ends; they are legitimate, social-welfare organizations engaged in issue advocacy. The government lacks a compelling interest in forcing them to disclose their members and supporters.

43.     Plaintiffs and their members and supporters are entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of 17

R.I.G.L. 35.3-1(h) as applied to themselves and to other organizations engaged in issue advocacy.

## COUNT II

### By requiring Plaintiffs to disclose their sponsorship of issue advocacy, the Board violates the First and Fourteenth Amendments.

44. The allegations contained in all preceding paragraphs are incorporated herein by reference.

45. Plaintiffs enjoy a right to anonymity in their free speech about public-interest issues, a right protected by the First Amendment as incorporated against the states. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Blakeslee v. St. Sauveur*, 51 F. Supp. 3d 210 (D.R.I. 2014).  The statutes in question violate that right by requiring Plaintiffs to report to the Board when engaging in issue speech and to put a detailed disclaimer announcing their sponsorship on all of their issue-advocacy materials.

46. As applied to Plaintiffs' planned activities, this statute affects genuine issue speech, not express advocacy concerning candidates or ballot measures.  *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836-37 (7th Cir. 2014) (government does not have "a green light to impose political-committee status on every person or group that makes a communication about a political issue that also refers to a candidate.").

11

47. Plaintiffs are entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of 17 R.I.G.L. 25.3-3 as applied to them and to other persons or organizations engaged solely in issue advocacy.

48. Plaintiffs are entitled to an injunction under 42 U.S.C. 1983 enjoining the continued enforcement of 17 R.I.G.L. 25.3-1 as applied to them and to other persons or organizations engaged solely in issue advocacy.

## COUNT III

### By requiring Plaintiffs to disclose their top donors on their materials, the Board violates the First and Fourteenth Amendments.

49. The allegations contained in all preceding paragraphs are incorporated herein by reference.

50. Forcing Plaintiffs to list their top donors on their advertisements (17 R.I.G.L. 25.3-3(a) (printed materials), (c) (television advertisements), (d) (radio advertisements), and (e) (robocalls)) is compelled speech. *Nat'l Inst. of Family & Life Advocates (NIFLA) v. Becerra*, 138 S. Ct. 2361, 2371 (2018) ("By compelling individuals to speak a particular message, such notices alter the content of their speech."). Because compelled speech is content-altering, such regulations are "presumptively unconstitutional" and subject to strict scrutiny. *Id.* The government cannot prove a compelling interest or narrow tailoring here.

51. Even if the compelled in-ad disclosure is analyzed under exacting scrutiny and the campaign-finance precedents rather than *NIFLA*, the government lacks a

sufficient interest or a substantial nexus to justify this particular requirement. This type of disclosure substantially heightens the chilling effect on Plaintiffs and their members and contributors, while making a poor fit to any supposed government interest. *Cal. Republican Party v. Fair Political Practices Comm'n*, No. CIV-S-04-2144 FCD PAN, 2004 U.S. Dist. LEXIS 22160, at *16-20 (E.D. Cal. Oct. 27, 2004) (granting injunctive relief against a similar statute in California).

52. Plaintiffs are entitled to an injunction under 42 U.S.C. 1983 enjoining the continued enforcement of 17 R.I.G.L. 25.3-3 as applied to them and to other persons or organizations when the advertisement is genuine issue advocacy.

## PRAYER FOR RELIEF

Plaintiffs, the Gaspee Project and Illinois Opportunity Project, respectfully request that this Court:

    a. Declare that 17 R.I.G.L. 25.3, to the extent that it compels member and supporter disclosure for organizations engaged in issue advocacy, violates the Plaintiffs' right to freedom of speech and association under the First and Fourteenth Amendments;

    b. Declare that 17 R.I.G.L. 25.3-1, in so far as it compels sponsor reporting for issue advocacy, violates the Plaintiffs' right to engage in anonymous speech under the First and Fourteenth Amendments;

c. Declare that 17 R.I.G.L. 25.3-3, to the extent that it compels sponsor disclosure for issue advocacy, violates the Plaintiffs' right to engage in anonymous speech under the First and Fourteenth Amendments;

d. Declare that 17 R.I.G.L. 25.3-3, to the extent that it compels in-ad donor disclosure for issue advocacy, violates the Plaintiffs' right against government compelled speech and government compelled disclosure of association;

e. Enjoin the Board from enforcing 17 R.I.G.L. 25.3-1 against Plaintiffs and other organizations that engage solely in issue advocacy;

f. Enjoin the Board from enforcing 17 R.I.G.L. 25.3-3 against Plaintiffs and other organizations when they sponsor issue advocacy;

g. Award Plaintiffs their costs and attorneys' fees under 42 U.S.C. § 1988; and

h. Award any further relief to which Plaintiffs may be entitled.

Dated: March 6, 2020

/s/ Daniel R. Suhr
Daniel R. Suhr (WI No. 1056658)*
Liberty Justice Center
190 S. LaSalle Street, Suite 1500
Chicago, Illinois 60603
Ph.: 312/263-7668
Email: dsuhr@libertyjusticecenter.org
*Lead Counsel for Plaintiff*

Respectfully submitted,
/s/ Joe Larisa
Joseph S. Larisa, Jr.
Larisa Law, LLC
50 South Main Street, Suite 311
Providence, RI 02903
Ph: 401/743-4700
E-mail: joe@larisalaw.com
*Local Counsel for Plaintiff*